**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

|  |  |
|---|---|
| In re:<br><br>LOUCHESCHI LLC<br><br>Debtor | Chapter 11<br>Case No. 11-42578-MSH |

**MEMORANDUM AND ORDER ON MOTION FOR RELIEF FROM STAY**
**OF LBM FINANCIAL, LLC**

LBM Financial, LLC has moved for relief from the automatic stay pursuant to § 362 of the Bankruptcy Code, 11 U.S.C. 101-1532, to permit it to enforce its security interests, including foreclosing its first mortgage, on a partially completed eight unit Cape Cod oceanfront residential condominium project in Dennisport Massachusetts, the sole asset of the debtor, Loucheschi, LLC.

LBM asserts its entitlement to relief from stay for cause under Bankruptcy Code § 362(d)(1) as a result of (1) a lack of adequate protection of its security interest in the Dennisport property and (2) bad faith of the debtor and its principals, Louis Cheschi and Peter Belli, in causing title to the property to be transferred from LBM's borrower and mortgagor, the Bell-Ches Realty Trust, to the debtor on the very day of LBM's scheduled foreclosure sale of the property (a) to hinder LBM from enforcing its rights and (b) in violation of a preliminary injunction issued by the Suffolk County Massachusetts Superior Court.   LBM also asserts that stay relief should be granted under Bankruptcy Code § 362(d)(2) because the debtor lacks equity in the Dennisport property and the debtor cannot demonstrate any reasonable prospect for reorganization.   The debtor disputes LBM's entitlement to relief from stay.

1

An evidentiary hearing on LBM's motion took place on July 27, 2011. The parties presented documentary evidence and the testimony of seven witnesses. They also submitted an agreed statement of facts. Based on the agreed facts and the evidence submitted I find and rule as follows in this core matter under 28 U.S.C. § 157(b)(2)(A) and (O).

Prior to August 2006, Marcello Mallegni, the owner of LBM, approached Louis Cheschi and offered Mr. Cheschi the opportunity to acquire oceanfront property at 9 Chase Avenue in Dennisport, Massachusetts. Mr. Mallegni told Mr. Cheschi to speak to Peter Belli who was interested in joining Mr. Cheschi in the acquisition. Mr. Cheschi and Mr. Belli formed the Bell-Ches Realty Trust, of which they were sole trustees and beneficiaries, through which the property was acquired. On August 9, 2006, Bell-Ches closed on a construction loan from LBM borrowing $4,540,000 and granting LBM a first mortgage on the property. LBM's note called for interest of 16% per annum and a maturity date of one year.[1] Under a contemporaneous construction loan agreement, Bell-Ches agreed to use the LBM loan proceeds to complete its project on the Dennisport property on or before the first anniversary of the loan.

Bell-Ches hired Lacourse Construction Company as the general contractor for its project. Lacourse was recommended to Bell-Ches by Mr. Mallegni. Lacourse maintained its business office in the same location as LBM, in a building owned by Mr. Mallegni or one of his affiliates. During the time Lacourse performed general contracting services for Bell-Chess it was also performing similar services on 10 to 20 other projects in which LBM was involved. All or substantially all Lacourse's business involved projects in which LBM participated. Neither Mr. Mallegni nor LBM had any ownership or management role in Lacourse.

---

[1] On July 31, 2007 LBM reduced the interest rate under the note to 8% per annum.

Lacourse began experiencing delays in payment of its requisitions almost from the outset of construction. Kenneth Lacourse, the principal of Lacourse Construction, as well as Mr. Cheschi testified that Mr. Mallegni was the cause of the delay in LBM's releasing funds to cover Lacourse's requisitions. By early 2007, LBM ceased funding requisitions and Lacourse walked off the project.

What transpired after Lacourse left the project is not entirely clear. According to a loan disbursement analysis prepared by LBM, construction on the project appears to have continued throughout 2007 with substantial payments from loan requisitions to other contractors, subcontractors and suppliers. As of December 11, 2007, LBM had disbursed a total of $3,847,928.44 of loan proceeds. Distributions after December 2007 indicate little or no construction activity at the project. A total of $64,552.67 of loan proceeds were disbursed by LBM between December 12, 2007 and July 15, 2011, many in round number amounts of $5000 or less, either to Mr. Cheschi or to unidentified recipients.

No evidence was introduced to establish that LBM ever made demand upon its borrower, Bell-Ches Realty Trust, for payment due under the note either because of default or the note's maturing. Both Mr. Cheschi and Mr. Belli testified they never received demand from LBM under their personal guarantees of the Bell-Ches loan nor had LBM instituted any collection efforts against them.

In any event, by mid-2011 LBM had begun the process of foreclosing its mortgage on the Dennisport property. The foreclosure sale was scheduled to take place on June 15, 2011.

Both Mr. Cheschi and Mr. Belli, the debtor's principals, testified that they first learned of LBM's pending foreclosure sale of the property on June 14, 2011. Mr. Cheschi learned about it from a friend who had seen it advertised and Mr. Cheschi told Mr. Belli. Neither man had received any

3

formal notice from LBM. Mr. Cheschi testified he consulted an attorney with the intention of filing a Chapter 11 petition for Bell-Ches Realty Trust in order to stop the foreclosure sale but the attorney told him a realty trust could not file a Chapter 11 petition and counseled him to cause title to the Dennisport property to be conveyed to an entity that qualified for Chapter 11 relief. The next morning Mr. Cheschi and Mr. Belli caused the property to be transferred to the debtor, Loucheschi LLC, of which they are the sole members, for the stated consideration of less than $100 and approximately one hour before the scheduled foreclosure sale, Loucheschi filed its Chapter 11 petition.

As of the Chapter 11 petition date, the condominium project remains incomplete. It consists of one L-shaped building containing eight units of approximately similar size. Two corner units have full ocean views, two other units offer partial views and four units afford no water vistas whatsoever. The structure is essentially weathertight[2] but the interior units and common areas are unfinished. LBM's construction specialist, Charles Martin, testified that the current cost to complete construction of the project is $1,996,530. The debtor's construction specialist, Kenneth Lacourse, the former project general contractor, testified that in 2008 he estimated the cost to complete the project at $1,300,000. William Depietri of D&D Capital LLC, a self-described "friendly hard money lender," whom the debtor called to testify on its behalf, opined that as of early 2009 when he had visited the property the cost to complete the project was $1,500,000. Mr. Martin's testimony reflected the most detailed, thorough and contemporaneous, and hence credible, analysis of the project completion cost. I adopt his opinion and find that the cost to complete the debtors condominium project is $1,996,530.

---

[2] The testimony indicated that the project had experienced some roof and window leakage during the past winter but that such conditions were not an ongoing problem

4

The parties have stipulated that the current fair market value of the property is $2,400,000 and its liquidation value is $1,600,000.

The debtor's witness on valuation, Richard Martin, a Cape Cod real estate broker, testified that the value of the units if they were complete would be $850,000-$950,000 each for the two prime ocean view units, $800,000 each for the two partial view units and $550,000-$700,000 each for the four remaining units, for a total value of $5,500,000-$6,300,000. Mr. Martin acknowledged on cross-examination that the current market for condominium units on Cape Cod was poor.

LBM presented evidence that as of July 15, 2011, the balance due on its loan to the Bell-Ches Realty Trust was $5,640,365.65[3]. The debtor disputes this amount.

As to the prospects for completion of the project, the debtor offered the testimony of Mr. Depietri of D&D Capital LLC who testified that his company was prepared to make an "equity loan" to the debtor as part of a plan of reorganization to fund the completion in stages and sale of units at the project. I understood Mr. Depietri's explanation of "equity loan" to mean his company proposed to sponsor a plan of reorganization in exchange for all or most of the equity in the reorganized debtor. Mr. Depietri testified that his company would consider allowing Messrs. Belli and Cheschi to participate as minority owners of the reorganized debtor but only if they were prepared to invest new money into the project. Mr. Depietri testified that based on the expected value of the units upon completion, D&D could sponsor a plan of reorganization that would provide ongoing debt service payments to LBM and ultimately result in the payoff of LBM's loan from unit sales as well as provide a dividend to the debtor's general unsecured creditors. Mr. Depietri did not offer any estimate as to how long a sale program would take.

---

[3] In its motion for relief from stay, LBM stated that the total balance due under the note as of June 15, 2011, the petition date, was $5,986,584.81.

Bankruptcy Code § 362(d) mandates the granting of relief from stay upon a creditor's request either for cause including the lack of adequate protection (§ 362(d)(1)) or, if the estate involves property, if the debtor lacks equity in the property (§ 362(d)(2)(a)) and if the property is not necessary for an effective reorganization (§ 362(d)(2)(b)).

LBM invokes all the statutory grounds in its request for stay relief.   LBM alleges that the debtor lacks equity in the Dennisport property and that the debtor has no prospect of reorganizing and hence the property is not necessary for an effective reorganization.   LBM also alleges a lack of adequate protection of its interest in the property because coastal weather conditions are causing the property to deteriorate and because the debtor is not paying real estate taxes on the property which will result in a lien on the property superior to LBM's mortgage position.   Finally, LBM argues that the debtor's bad-faith in participating in an eleventh-hour transfer of title to the property for the purpose of frustrating LBM's foreclosure sale and in violation of a state court preliminary injunction constitutes further cause for stay relief.

Taking the alleged bad-faith first, I find that the purpose of Messrs. Cheschi and Belli in causing title to the Dennisport property to be conveyed from Bell-Ches Realty Trust to the debtor was part of a larger plan to protect the property through a bankruptcy filing and was precipitated by their belief that Bell-Ches was not eligible to file bankruptcy.   The transfer was for the sole purpose of creating what Messrs. Cheschi and Belli believed was a bankruptcy-eligible entity. All of this was done with the immediate goal of preventing LBM's foreclosure sale scheduled for later the same day.

In *Columbia Mortgage Co. v. I-5 Investors, Inc. (In re I-5 Investors, Inc.)*, 25 B.R. 346 (Bankr. D. Or. 1982), the secured creditor sought relief from the automatic stay and dismissal of the debtor's Chapter 11 case for lack of good faith because of an eleventh-hour transfer of the lender's

6

collateral to a bankruptcy-eligible entity for the sole purpose of allowing the entity to commence a Chapter 11 case.  The court observed that existing case law dealing with transfers such as the one in question "which some have labelled [sic] the 'new entity syndrome' leads to the conclusion that under the Bankruptcy Code, such a transfer is not universally subject to dismissal as a bad faith filing. Such transactions are, however, subject to close scrutiny and should not be allowed to be detrimental to unsecured creditors, nor if their only purpose is to frustrate secured creditors with little or no prospect of development of a feasible plan [sic]."  *Id.* at 353.  *See also Matter of Northwest Recreational Activities, Inc.*, 4 B.R. 36 (Bankr. D. Ga. 1980).

In *In re Reyes Ramos*, 2006 WL 3898377 (Bankr. D.P.R. Jan. 13, 2006), the court acknowledged that filing a bankruptcy petition in bad faith is cause for relief from stay under Bankruptcy Code § 362(d)(1) and summarized various approaches other courts have taken in determining whether a filing was in bad faith.  Some courts consider a series of factors including whether:

1. The debtor has few or no unsecured creditors;
2. The debtor has previously sought relief;
3. The petition was filed on the eve of foreclosure;
4. The foreclosed property is the sole or major asset of the debtor;
5. The debtor has no ongoing business;
6. The debtor has no ability to reorganize;
7. The reorganization involves a two party dispute; and
8. The corporate debtor was formed to effectuate the filing.

*Id.* at *3 (citing *In re Harvey Road Associates VIII*, 140 B.R. 302 (Bankr. D. Mass 1992) and *In re Bryan*, 104 B.R. 554 (Bankr. D. Mass.1989)).  At least one court engaged in examining

> "(1) when the petition is filed merely as a litigation tactic; (2) when the petition was filed solely to frustrate the legitimate efforts of other parties to enforce their rights; (3) when the debtor lacks a valid reorganizational purpose; and (4) when the debtor's sole motive is to avoid a contract."

*Reyes Ramos*, 2006 WL 3898377, at *3 (citing *In re Walden Ridge Development*, 292 B.R. 58 (Bankr. D.N.J. 2003). Other courts prefer a totality of the circumstances approach. *Reyes Ramos*, 2006 WL 3898377, at *3 (citing *In re U.S. Advertising Inc.*, 131 B.R. 537, 540 (Bankr.D.R.I.1991) and *Marrama v. Citizens Bank of Massachusetts (In re Marrama)*, 430 F.3d 474, 482 (1st Cir.2005)).

Under any of the approaches, I do not find the parties' conduct to have been in bad faith. The filing of bankruptcy for the purpose of frustrating a secured party's imminent efforts to foreclose is not in and of itself bad faith.

As to LBM's allegation that the transfer of the property violated a state court preliminary injunction, the debtor introduced a copy of a judgment entered by the Suffolk County Superior Court in favor of the plaintiff in that suit, 1st Source Bank, and against Mr. Belli, the named defendant, on May 3, 2011. The judgment dissolved the injunction. *Judge Rotenberg Educ. Center, Inc. v. Comm'r of the Dept. of Mental Retardation*, 424 Mass 471, 472 (1997) ("A preliminary injunction lapses when a final decree is entered."). Thus when the transfer of title occurred on June 15, 2011 no injunction existed. Even if the preliminary injunction had not been dissolved by entry of judgment, an injunction prohibiting a party from exercising his right to seek bankruptcy protection is against public policy and thus unenforceable. While no reported decisions dealing with the enforceability of injunctions preventing bankruptcy relief have been identified, courts have wrestled with the issue of an entity's *voluntary* agreement not to file bankruptcy or waive specific Bankruptcy Code protections with no uniform result.

> The enforceability of prepetition waivers of the right to seek relief in Bankruptcy Court or the waiver of specific bankruptcy benefits has produced substantial litigation.

8

> Some courts have held that such prepetition waivers of bankruptcy benefits are unenforceable. *See Matter of Pease*, 195 B.R. 431, 432 (Bankr.Neb.1996) (citations omitted). Several courts have found that prepetition waiver of bankruptcy benefits are valid and enforceable. *See In re Gulf Beach Development Corp.*, 48 B.R. 40 (Bankr. M.D. Fla. 1985). However, in those cases, the secured creditor was not relying solely upon the language of the prepetition waiver and instead, made an independent showing of bad faith. *See, e.g., In re University Commons, L.P.*, 200 B.R. 255 (Bankr. M.D. Fla. 1996), rehearing den. at 204 B.R. 80; *In re Citadel Properties, Inc.*, 86 B.R. 275 (Bankr. M.D. Fla. 1988).

*In re South East Financial Associates, Inc.*, 212 B.R. 1003, 1005 (Bankr. M.D. Fla. 1997). *See also In re Powers*, 170 B.R. 480, 484 (Bankr. D. Mass.1994) (court must examine relevant facts in determining whether prepetition waiver of automatic stay is enforceable). An involuntary restraint of the right to file bankruptcy such as through an injunction should be subject to greater scrutiny than a voluntary waiver of the right to file bankruptcy. Thus the Suffolk Superior Court injunction should not be viewed as prohibiting a transfer of assets, without any attempt to circumvent liabilities, to enable a party to avail itself of an orderly reorganization under the Bankruptcy Code. Since the conveyance of the Dennisport property was for the sole purpose of implementing a plan to file bankruptcy, an injunction prohibiting such a conveyance would be overbroad and to that extent unenforceable.

As to the issue of the debtor's likelihood of a successful reorganization, while it is true that the rescue plan for the debtor described by Mr. Depietri of D&D Capital is not far enough along to constitute a binding commitment to fund a plan of reorganization, under the circumstances of this case which has been pending for approximately 6 weeks, I find that it satisfies the United States Supreme Court's requirement that the debtor demonstrate "a reasonable possibility of a successful reorganization within a reasonable time." *United States Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 375-76 (1988). I find that this case involves single asset real estate and thus pursuant to Bankruptcy Code § 362(d)(3) the debtor is obligated on or before

September 13, 2011 either to file a plan of reorganization or begin making monthly debt service payments to LBM. LBM and the debtor's other creditors will know soon enough if there will be a reorganization here. Having determined that the debtor has satisfied its burden of showing an effective reorganization in prospect, it is not necessary to address the second requirement for relief from stay under § 362(d)(2)–lack of equity.

As to adequate protection of LBM's interest in the debtor's property, I find that between now and the autumn when the debtor will be required to file a plan or begin making debt service payments to LBM, the Dennisport property will not suffer further weather related physical deterioration. LBM's secured position will deteriorate, however, to the extent real estate tax bills rendered postpetition are not paid. Accordingly, I will order the debtor to pay such real estate tax bills as they become due.

For all the foregoing reasons, LBM's motion of relief from stay is denied. The debtor shall pay all real estate tax bills rendered on the property since the Chapter 11 petition date in full as they become due.

At Worcester, Massachusetts this 2nd day of August, 2011.

By the Court,

Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing:  Evans J. Carter and
Philip F. Coppinger
Evans J. Carter, P.C.
Framingham, Massachusetts
for LBM Financial, LLC

Gary M. Hogan
Gilmore, Rees & Carlson, P.C.
Franklin, Massachusetts
for the debtor

Joseph H. Baldiga
Mirick, O'Connell, DeMallie & Lougee, LLP
Worcester, Massachusetts
for proposed plan sponsor D&D Capital, LLC.