UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| In re:  )  <br> ) <br> LOUCHESCHI LLC  ) <br> ) <br> Debtor  ) <br> ) | Chapter 11 <br> Case No. 11-42578-MSH |

**MEMORANDUM AND ORDER ON MOTION OF LBM FINANCIAL LLC FOR ESTIMATION OF AMOUNT OF ALLOWED CLAIM**

LBM Financial LLC filed a proof of claim in this case on October 31, 2011 which was docketed as claim no. 1 on the claims register maintained by the court. The proof of claim asserts a claim in the amount of $5,640,365.65 secured by a first mortgage on property owned by the debtor, Loucheschi LLC, consisting of a partially built eight-unit oceanfront condominium on Cape Cod in Dennis, Massachusetts, named, aptly or unfortunately depending on whether one is the creditor or the debtor, Shifting Sands.

Loucheschi objected to the allowance of LBM's proof of claim incorporating "all claims, causes of action, defenses and set-offs" asserted by Loucheschi and its principals, Peter Belli (now deceased) and Louis J. Cheschi, Jr., in a thirteen-count complaint filed in this court against LBM and others as adversary proceeding number 11-01422.

Loucheschi has proposed a plan of reorganization for which a disclosure statement has been approved and a confirmation hearing scheduled to begin today, May 30, 2012. LBM has timely filed its notice of election pursuant to 11 U.S.C. § 1111(b)(2), (11 U.S.C. § 101 *et seq*), to which no objection has been interposed. The impetus for this order is LBM's motion for estimation of its claim pursuant to Bankruptcy Code § 502(c) and Rule 3018(a) of the Federal Rules of

1

Bankruptcy Procedure so that LBM's rights in connection with confirmation of Loucheschi's plan can be determined.

A one-day hearing to enable the parties to introduce evidence as to the appropriate estimated claim took place on May 21, 2012. Four witnesses testified orally and by affidavit and fifty exhibits were introduced. The parties also filed an agreed statement of facts as part of their joint pretrial memorandum.

Prior to the evidentiary hearing I had entered a procedural order ruling that for purposes of determining which party bore the burden of proof, the claim estimation process would be treated similarly to the claim objection process and thus LBM's proof of claim would be accorded prima facie evidence of its validity under Rule 3001(f) of the Federal Rules of Bankruptcy Procedure. Loucheschi would therefore have the burden of presenting sufficient evidence to overcome the presumption of validity and, if successful, the burden would shift to LBM to prove its claim.

LBM's proof of claim is based on an August 9, 2006 construction loan to Loucheschi's predecessor, Bell-Ches Realty Trust, in the original principal amount of $4,540,000. A portion of the loan proceeds, in the amount of $2,355,469.50, went to repay LBM for an October 8, 2004 loan to Bell-Ches in the principal amount of $1,900,000 which Bell-Ches used to acquire the Dennis property. The actual purchase price of the property was $1,750,000. Of the $1,750,000 purchase price, $1,689,947.70 was paid to LBM as the holder of the first mortgage from the prior owner of the Dennis property. LBM through its principal and owner, Marcello Mallegni, introduced Messrs. Belli and Cheschi to the Dennis property and encouraged them to acquire and develop it, offering to provide financing for that purpose.

2

LBM is a so-called "hard money lender." It charges high rates of interest and substantial fees to borrowers unwilling or unable to obtain cheaper credit from conventional lenders. The contract rate of interest for both the 2004 purchase money loan and the 2006 construction loan was 16% per annum. In the event of a default, each loan provided for default interest to begin accruing at the rate of 20% per annum, plus one point per month plus a late charge equal to 10% of each overdue payment.   At closing LBM collected origination fees equal to 4% of the loan amount, $76,000 for the 2004 purchase money loan and $181,600 for the 2006 construction loan. Considering that 51% of the funds to be loaned by LBM in the 2006 construction loan went to repay LBM's purchase money loan for which LBM had already received a $76,000 origination fee, the 2006 origination fee as a percentage of the "new" money to be advanced by LBM was at the effective rate of 8.2%.

LBM compounded interest it charged thereby charging interest on interest. Between October 8, 2004, when the purchase money loan closed, and August 11, 2006, when it was repaid from the proceeds of the construction loan, LBM accrued $455,469.50 in compound interest, late fees and default points not including interest payments totaling $44,582.97 made by the borrower. In addition, from the $1,900,000 purchase money loan amount LBM received $76,000 in origination fees and $61,392.39 in prepaid interest (not to mention the $1.68 million to repay the outstanding loan of the prior owner, which itself I can only assume was comprised of similar fees and charges). In other words, on a loan of $1,900,000, LBM earned $637,444.86 in just under 2 years.

With respect to the 2006 construction loan, according to the affidavit of Mr. Mallegni, in preparing LBM's proof of claim for filing in this case, he instructed LBM's in-house accountant,

3

David Kozik, to re-calculate the loan balance using simple interest at 8% per annum rather than 16% compounded as LBM had been charging up to that time. This rate reduction was applied retroactively as of July 31, 2007 for purposes of calculating LBM's claim in this case.   Of the total loan amount of $4,540,000, $2,551,385.50 was disbursed at the August 9, 2006 loan closing. $2,355,469.50 went to repay the balance due on the 2004 purchase money loan. The balance of $195,916.00 paid closing costs including $181,600 in origination fees to LBM and $4000 in loan processing fees to Stone Services, Inc., a company, like LBM, owned by Mr. Mallegni. (It should be noted that Stone Services received a $1000 fee from the proceeds of the 2004 purchase money loan also.) Between August 9, 2006 and August 2, 2008, LBM made disbursements which it charged to the loan balance totaling $1,369,741.23. LBM maintains that these disbursements were all made at the instruction or with the approval of Louchseschi or its principals, Messrs. Cheschi and Belli, for the benefit of the Shifting Sands project. Loucheschi disputes this but has offered no credible evidence to support its challenge. Thus for purposes of this estimation hearing I will accept LBM's disbursement figure. LBM ceased making disbursements on the construction loan in August 2008. Between August 9, 2006 and July 15, 2011, based on its revised interest rate calculation, LBM charged $1,727,864.11 in interest on the 2006 construction loan. I note that Loucheschi's chapter 11 petition was filed on June 15, 2011. It is unclear whether LBM's claim incudes one month's post-petition interest, but for purposes of this estimation hearing the issue can be deferred.   In any event, in addition to the interest charged, LBM took a $181,600 origination fee thus bringing to $1,909,464.11 LBM's total in fees and interest sought to be charged on funds advanced of $3,921,126.73. But note that these numbers reflect the fact that as Mr. Mallegni's affidavit states, LBM retroactively altered its contract rate of interest from 16% compounded to

4

8% simple effective as of July 31, 2007 "on advice of counsel" at the time it prepared its proof of claim in 2011. Prior to that time LBM expected its borrower to pay in full under its loan terms. In 2009, LBM submitted a loan history to Bell-Ches, Loucheschi's predecessor, which carried interest at 16% compounded through year-end 2008. The total interest charged just for that 2.5 year period was $1,381,086.75.

The reason LBM ceased funding the construction loan in August of 2008 is a matter of dispute. LBM claims it is because construction on the project had stopped and the borrower had stopped submitting construction requisitions. LBM also claimed that it was prevented from advancing new funds because of an injunction issued in November, 2007 in an unrelated state court lawsuit to which its borrower was subject.  Loucheschi claims that construction stopped because LBM refused to timely honor requisitions to pay Loucheschi's general contractor, Lacourse Construction Co., Inc., who in the spring of 2007 walked off the job leaving the project without a general contractor. Even though Lacourse exited the job in early 2007, however, construction continued through the fall of 2007 to the point where the building shell was left weather-tight. LBM funded all construction requisitions for this work as well as for additional project related expenses in 2008.

The evidence establishes that LBM had a relationship with Lacourse Construction well beyond the confines of the Shifting Sands project. Lacourse acted as general contractor on many projects of which LBM was the lender. For some period before Lacourse went bankrupt, it maintained its place of business at 171 Locke Drive in Marlboro, Massachusetts, a building owned by Mr. Mallegni or his affiliate, and the headquarters of LBM. Mr. Mallegni recommended Lacourse to Messrs. Belli and Cheschi. The evidence, however, is inconclusive as to whether LBM

5

acted improperly in processing Lacourse's construction requisitions or with improper motives forced Lacourse to walk off the job thereby causing the project eventually to come to a halt. Mr. Cheschi's testimony and affidavit on these points did not withstand cross-examination. For example, assertions by Loucheschi and Mr. Cheschi of improper loan disbursements by LBM of $50,000 to LBM's attorney, Michael Norris, on November 17, 2006 and $67,775.60 to LBM on January 24, 2007, were rebutted by signed directives from agents of Bell-Ches authorizing these disbursements. Mr. Cheschi's testimony that he relied on Mr. Mallegni's representations that all permitting for the Shifting Sands project had been completed or was virtually complete prior to Bell-Ches's acquisition of the Dennis property in 2004 and that the project would take a year to complete strains credulity. Only a person who signs legal documents without reading them, as Mr. Cheschi testified he did, could be naïve enough to assume he could expose himself to millions of dollars of potential liability without taking steps to independently verify such easily verifiable but critically important facts.

Of the thirteen counts in Loucheschi's complaint which form the basis of its objection to LBM's proof of claim, I find that for purposes of this estimation hearing only with respect to count VIII (usurious lending) has Loucheschi carried its burden of rebutting the presumption of validity which LBM's claim enjoys by virtue of Rule 3002(f).

The Massachusetts criminal usury statute, Mass. Gen. Laws ch. 271, § 49 caps the allowable amount of interest and expenses that a lender may charge a borrower at 20%. The allowable cap on interest and expenses extends beyond the contract rate of interest and includes, among other charges, sums paid or to be paid for brokerage, recording fees, and forbearance to enforce payment. In *Begelfer v. Najarian*, 409 N.E.2d 167 (Mass. 1980), the Supreme Judicial

6

Court of Massachusetts considered whether default charges were includable in the total interest and expense amount for purposes of determining a violation of the usury statute. The SJC ruled emphatically that default charges are includable.

When LBM and Louchseschi entered into the construction loan in 2006, the contract rate of interest was 16% per annum while the default rate was 20% per annum plus 1% for each month of default along with a 10% late charge for each overdue payment.   In *In re 201 Forest Street LLC*, 409 B.R. 543 (Bankr. D. Mass. 2009), Judge Rosenthal considered an LBM loan with identical terms and concluded that the annual default rate of interest was the equivalent of 41%. Whatever is the effective default rate in this case, it is clearly in excess of 32% (20% plus 1% per month).

Section 49 states that "[w]hoever in exchange for either a loan of money or other property knowingly *contracts for*, charges, takes or receives, directly or indirectly, interest and expenses the aggregate of which exceeds an amount greater than twenty per centum per annum . . .   shall be guilty of criminal usury . . . ."   Whether LBM actually charged the default rate is immaterial. Default interest in excess of 20% is "contracted for" in the 2006 construction loan and thus the loan is usurious.

Having determined that the 2006 loan is usurious, the burden shifts to LBM to assert a defense including the one available to it under Mass. Gen. Laws ch. 271, § 49.   As the Court in *Begelfer* aptly noted, "[a] lender faced with bad credit risks and inadequate collateral is not helpless to protect himself: he may register with the Attorney General, and then charge more than twenty per cent a year for interest and expenses." 409 N.E.2d at 173. LBM has failed to produce a letter or any other evidence of its registration with the attorney general pursuant to Mass. Gen.

Laws ch. 271, § 49(d). Mr. Kozik's testimony that he believed LBM registered with the attorney general is insufficient to satisfy the statutory defense.

LBM also raises as a defense to the usury claim a document admitted into evidence entitled Terms of Modification of Note. This document, which is signed by the borrower and guarantors on December 8, 2008 but not by LBM, purports to be an agreement to modify the 2006 construction loan by reducing the contract rate of interest from 16% to 12% effective November 20, 2008 and reducing the total indebtedness from $5,498,355.63 to an even $5,000,000. The agreement also contains a clause whereby the borrower and guarantors agree that they have no "claims for any other credits" from LBM. Even if this agreement were consummated, which it clearly was not as none of its modifications were ever implemented, it would not serve to remedy the usury taint. Nothing in the agreement addresses the default charges which comprise the usury claim nor does an acknowledgement that the borrower has no further claims for credits have anything to do with a claim that the loan violates the criminal usury statute.

While Mass. Gen. Laws ch. 271, § 49 provides that a usurious loan may be declared void, the Supreme Judicial Court in *Begelfer* made it clear that voiding the loan is not mandatory and that a court may fashion an equitable remedy based on the specific facts of the case.

One of the striking and most troubling features about LBM's method of doing business is the lack of predictability or consistency in the way it administers its loans. For example, it did not require Bell-Ches or Loucheschi to make regular payments on either the 2004 or 2006 loans. In fact only three interest payments in random amounts were ever made on the 2004 purchase money loan (excluding some prepaid interest collected at closing) and not a single payment was ever made on the 2006 construction loan. When Bell-Ches attempted to explore opportunities for

8

refinancing the 2006 loan, it could not get LBM to issue a simple payoff letter so it could show potential new lenders how much it would take to pay off LBM's loan. The interest rate on the 2006 loan was apparently whatever Mr. Mallegni said it was. The contract rate was 16% but in December, 2008 discussions were had to reduce it to 12%. Then in 2011 Mr. Mallegni "on advice of counsel" reduced the interest rate to 8% retroactive to July 2007. This course of conduct leads me to conclude that the appropriate remedy here is to disallow the interest component of LBM's claim. This would give LBM a secured claim in the amount of funds advanced on the 2006 construction loan totaling $3,921,126.73. Even this claim actually includes some interest if we recall that a portion of the funds advanced in 2006 went to pay off the 2004 purchase money loan which included a whopping $455,469.50 in interest and interest-related charges.

Based on the foregoing, for the purpose of determining the confirmability of Loucheschi's chapter 11 plan of reorganization, I estimate LBM's claim as a secured claim in the amount of $3,921,126.73.

Dated: May 30, 2012                                    By the Court,

                                                       _____
                                                       Melvin S. Hoffman
                                                       U.S. Bankruptcy Judge


    Counsel Appearing:    Gary M. Hogan
                          Gilmore, Rees & Carlson, P.C.
                          Franklin, Massachusetts
                          For Loucheschi LLC

                          Philip F. Coppinger
                          Marlborough, Massachusetts
                          For LBM Financial, LLC